FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 AUG -7  PM 4: 51

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP EXPLORATION AND PRODUCTION, INC., | ) ) ) | CIVIL ACTION NO.  02-2318 |
| Plaintiff, | ) ) | |
| vs. | ) ) | SECTION: "A" |
| CALLIDUS TECHNOLOGIES, L.L.C., | ) ) ) | |
| Defendant. | ) ) | MAGISTRATE: 1 |

### CALLIDUS TECHNOLOGIES, L.L.C.'S MOTION TO DISMISS
### AND ALTERNATIVE MOTION TO TRANSFER VENUE

NOW INTO COURT, through undersigned counsel, comes Callidus Technologies, L L C.

("Callidus"), who respectfully moves this Honorable Court for an Order dismissing plaintiff, BP

Exploration and Production, Inc.'s ("BP Exploration") Petition for Damages that was filed in

Louisiana state court and subsequently removed to the Eastern District of Louisiana. The basis of this

motion is that suit on the same contract that is the subject of this litigation is currently pending in the

Northern District of Oklahoma, where suit was originally filed  Therefore, for reasons more fully set

forth in the accompanying memorandum, Callidus respectfully submits that this Court should dismiss

1



the instant suit, or alternatively, transfer the case to the Northern District of Oklahoma where suit was originally filed.

Respectfully submitted,

**DANIEL T. PLUNKETT TA (#21822)**
**ADAM C. McNEIL (#27001)**
**McGLINCHEY STAFFORD**
643 Magazine Street
New Orleans, Louisiana 70130
Telephone:    (504) 586-1200
Fax:             (504) 596-2871
**Attorneys for Callidus Technologies, L.L.C.**

and

**STEVEN M. HARRIS, OBA #3913**
**DOYLE HARRIS DAVIS & HAUGHEY**
1350 South Boulder, Suite 700
Tulsa, OK 74119
(918) 592-1276
(918) 592-4389 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served upon all counsel of record by depositing same in the U.S. Mail, postage prepaid, on this ___7th___ day of August, 2002.

350866

2

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP EXPLORATION AND PRODUCTION, INC., | ) ) ) | CIVIL ACTION NO. 02-2318 |
| | ) | SECTION:  SECT. "A" |
| Plaintiff, | ) ) | MAGISTRATE: 1 |
| vs. | ) ) | |
| CALLIDUS TECHNOLOGIES, L.L.C. | ) ) ) | |
| Defendant. | | |

**CALLIDUS TENCHOLOGIES, L.L.C.'S  MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND
ALTERNATIVE MOTION TO TRANSFER VENUE**

**MAY IT PLEASE THE COURT:**

Defendant Callidus Technologies, L.L.C. ("Callidus") respectfully submits this
Memorandum in Support of its Motion to Dismiss and Alternative Motion to Transfer Venue.
Callidus avers that the subject matter of this litigation is currently pending before the Northern
District of Oklahoma. As set forth in more detail below, Callidus filed suit against BP
Exploration and Production, Inc. ("BP Exploration") on the same contract that is the subject of
this litigation prior to BP Exploration filing suit in Louisiana State court. Because Rule 13(a) of
the Federal Rules of Civil Procedure dictates that a party must assert its compulsory
counterclaim in the original action when that counterclaim arises out of the same transaction or
occurrence of the original action, Callidus respectfully requests this Honorable Court for an
Order dismissing the above captioned litigation. Alternatively, Callidus requests that this Court

transfer the case to the Northern District of Oklahoma so that it may be consolidated with the case that was previously filed by Callidus.

## BRIEF FACTUAL HISTORY

BP Exploration issued a purchase order dated June 26, 2000 to Callidus for the manufacture of the "Mica High Pressure Flare Tip" ("Mica tip"), the "Pompano High Pressure Flare Tip," and the "Pompano Low Pressure Flare Tip" ("Pompano tips") (collectively "flare tips"). (Purchase Order dated June 26, 2000, Exhibit 1). The purchase order was issued by BP's agent, Mustang Engineering, Inc. ("Mustang Engineering") which is located in Houston, Texas. (Purchase Order dated June 26, 2000, Exhibit 1, p. 1). The flare tips were designed in Tulsa, Oklahoma and manufactured in Beggs, Oklahoma. (Declaration of Brian Duck, Exhibit 5).

Virtually all communications involving specifications of the flare tips were between Mustang Engineering (located in Houston, Texas) and Callidus (located in Tulsa, Oklahoma). Mustang Engineering inspected the manufacturing progress of the flare tips for compliance with contract specifications in Beggs, Oklahoma. (Declaration of Brian Duck, Exhibit 5).

After Callidus had manufactured the flare tips, they were inspected and approved by Mustang Engineering. BP Exploration took delivery of the flare tips and title transferred to BP Exploration at Beggs, Oklahoma. BP Exploration's purchase order specified that delivery was to occur "F.O.B.: Loaded Truck, Callidus Facilities, Beggs, Ok." (Purchase Order dated June 26, 2000, Exhibit 1, p. 1). [1]

---

[1] F.O.B. is an abbreviation for "free on board," a delivery term that requires a seller to ship goods and bear the expense and risk of loss to the F.O.B. point designated--here, the point of manufacture, i.e., Beggs, Oklahoma. See BLACK'S LAW DICTIONARY 665 (6 th ed.1990). Under the Uniform Commercial Code, title to goods usually passes from the seller to the buyer at the F.O B. location. See U.C.C. § 2-319(1).

The BP Exploration purchase order stated that the flare tips were to be utilized at the Pompano Offshore Platform in the Gulf of Mexico located at Block 989 of the Viosca Knoll region. Specifically, the purchase order stated: "This equipment is for first use in Federal Gulf of Mexico Offshore waters, Viosca Knoll, Block No. 989, CS G-8483..." (Purchase Order dated June 26, 2000, Exhibit 1, p. 4).

Block 989 of the Viosca Knoll and the Pompano Platform (situated within Block 989) is East of the eastern most point of Louisiana. Block 989 is directly South of the State of Mississippi. Courts considering the issue of what law applies to actions arising on the outer continental shelf[2] extend the dividing boundary between each state (i.e. Louisiana, Mississippi, Alabama, etc.) directly South into the Gulf of Mexico waters to determine which state's law acts a surrogate to federal law. By extending the boundaries directly South, the Pompano Platform and Block 989 are situated within the boundaries of Mississippi for purposes of the Outer Continental Shelf Lands Act. Therefore, because (1) the place of manufacture was not within the state of Louisiana, and (2) the platform was not within nor adjacent to the state of Louisiana, Louisiana law is not applicable to the interpretation of the contract. (Purchase Order dated June 26, 2000, Exhibit 1, pp. 1,4; Mineral Management Service Outer Continental Shelf Protraction Diagram, Exhibits 3, 3A, 4, 4A, and 4B). *See* Section II of this Memorandum (infra).

---

[2]      See 43 U.S.C. §1331 et. seq. (The Outer Continental Shelf Lands Act ).

## PROCDURAL HISTORY

Callidus filed suit against BP Exploration in the Northern District of Oklahoma on May 6, 2002. (Callidus Complaint, Exhibit 6).[3]  The claim arose out of the June 26, 2000 purchase order for the sale of the flare tips. (Callidus Complaint, Exhibit 6).  BP Exploration answered Callidus' complaint on June 20, 2002. (BP Exploration Answer, Exhibit 7).  Twenty two days after answering the Callidus complaint, BP Exploration filed a petition in Louisiana State Court against Callidus on July 12, 2002 alleging a claim that arose out of the same contract for the purchase of the "Mica High Pressure Flare Tip" and "Pompano High and Low Pressure Flare Tips." (BP Exploration Petition for Damages, Exhibit 8).  On July 30, 2002, Callidus timely removed the Louisiana State Court suit on the basis of diversity.  (Callidus Notice of Removal, Exhibit 2).  The removed action is now before this Court.

The allegations set forth in the Callidus complaint filed in the United States District Court for the Northern District of Oklahoma (Callidus Complaint, Exhibit 6) and the facts alleged in BP Exploration's Answer to Callidus' complaint comprise the same facts, circumstances, and claims presented in the petition filed by BP Exploration against Callidus with the Louisiana State Court (now removed to this Court) (BP Exploration Petition for Damages, Exhibit 8).  Because the subject matter of BP Exploration's petition against Callidus arose out of the same transaction and occurrence that is the subject matter of the suit originally filed by Callidus in the Northern District of Oklahoma, Callidus respectfully submits that the above captioned suit should be

---

[3]       BP Exploration and Production, Inc.  (plaintiff here) and BP Exploration and Oil, Inc. (defendant in the Oklahoma action brought by Callidus Technologies, LLC)  are the same legal entity due to merger/name change. *See* Callidus Exhibit 12 - "letter dated July 24, 2002 from Ronald A. Johnson, legal counsel for BP and accompanying history of the merger/name change provided by Mr. Johnson.

dismissed, or alternatively, transferred to the Northern District of Oklahoma where it can be consolidated with the litigation that is already pending between the parties.

## LAW AND ARGUMENT

**I.   BP EXPLORATION'S LOUISIANA SUIT IS BARRED BY RULE 13(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE FIRST TO FILE RULE.**

The claims asserted by BP Exploration are compulsory counterclaims that should have been asserted in the litigation that is currently pending in the Northern District of Oklahoma. Rule 13(a) of the Federal Rules of Civil Procedure states:

> "A pleading <u>shall</u> state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

F.R.Civ.P. 13(a) (emphasis added).

Rule 13(a) of the Federal Rules of Civil Procedure requires a party who has a valid counterclaim against a plaintiff to assert that claim in the suit that was originally filed against it. *Southern Construction Co. v. Pickard*, 371 U.S. 57, 58, 83 S.Ct.108, 109 (1962); *United States v. Eastport S.S. Corp.*, 255 F.2d 795, 801-802 (2nd Cir. 1958) Federal courts have consistently held that compulsory counterclaims which should have been asserted in the first filed action can not form the basis of a separate suit. *Otto Candies, Inc. v. World Marine Transport & Salvage, Inc.*, 1994 WL 449516 (E.D. La. 1994), *citing West Gulf Maritime Assn. v. ILA Deep Sea Local 24, etc. et al*, 751 F.2d 721, 728-729 (5th Cir. 1985).

The allegations set forth in the Callidus complaint filed in the United States District Court for the Northern District of Oklahoma (Callidus Complaint, Exhibit 6) and the facts alleged in

BP Exploration's Answer to Callidus' complaint (BP Exploration Answer, Exhibit 7) comprise the same facts, circumstances, and claims presented in the petition filed by BP Exploration against Callidus in the above captioned litigation. (BP Exploration Petition for Damages, Exhibit 8). Because the subject matter of BP Exploration's state court petition against Callidus arose out of the same transaction and occurrence that is the subject matter of the suit originally filed by Callidus in the Northern District of Oklahoma, Callidus respectfully submits that the above captioned suit should be dismissed.

Once a court finds that a previously filed suit is pending between the parties in another jurisdiction, and the subject matter of the two suits "substantially overlap," the second court should either dismiss the litigation or transfer it to the district where the first suit was filed. *Save Power Limited v. Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997); *West Gulf Marine v. ILA Deep Local 24*, 751 F.2d 721 (5th Cir. 1985). Because the Fifth Circuit has held that the second forum's discretion is limited to determining whether the case pending before it substantially overlaps with the subject matter in the first forum, Callidus respectfully submits that the Court should either dismiss the current litigation or transfer it to the Northern District of Oklahoma.

In *West Gulf Marine*, the Fifth Circuit was faced with this very issue. It held that:

> Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the Texas court (where the second suit was filed) to resolve the question of whether both should be allowed to proceed. By virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving the subject matter in Texas, the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York (the court where the first suit was filed).

*West Gulf Marine*, 751 F.2d at 730, *citing Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir.1971).

Likewise, in *The Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999), the Fifth Circuit reiterated that once a court finds that substantial overlap exists, the second court must either dismiss or transfer the case that is before it. Specifically, the Fifth Circuit stated:

> "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed." *Mann*, 439 F.2d at 407. The district court correctly refused to act as a "super appellate court" by entertaining either Cadle's jurisdiction or the defendant's standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister court, one of "the very abuses the first-to-file rule is designed to prevent."

*Id.* at 605-606.

Additionally, in *Otto Candies, Inc. v. World Marine Transport & Salvage, Inc.*, 1994 WL 449516 (E.D. La., 1994), this Court found that because the issues substantially overlapped, it was bound to transfer the second filed case pending before it to the Southern District of Alabama where the first suit was filed. This Court stated:

> "It is clear to this Court that the subject of this lawsuit is part and parcel of the Alabama litigation. Further, this Court holds that the distinct issues of the propriety of any offset and the necessity of a compulsory counterclaim are properly directed to the (previously filed litigation pending in the) Southern District of Alabama. Therefore, the Court finds that the alternative request of transfer to that district is the appropriate disposition of this matter.

> Under similar circumstances, Judge Tate formally recognized the propriety of transfer under the "first-filed" rule. . . . In so doing,

7

> Judge Tate acknowledged that "the court with 'prior jurisdiction over the common subject matter' should resolve all issues presented in related actions." *West Gulf,* 751 F.2d at 730, *quoting, Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir.1971). " '[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues.' " *Id."*

*Otto Candies,* 1994 WL 449516 at p.1 (emphasis added.)

Callidus respectfully submits that because there is substantial overlap between this suit and the suit filed by Callidus in Oklahoma, this Court should not decide the merits of BP Exploration's claims. The Fifth Circuit has held that once a court determines that substantial overlap exists, the district court is bound to either stay, transfer, or dismiss the action before it. There is no genuine controversy that BP Exploration's claims are compulsory counterclaims which BP Exploration was required to plead in response to the Callidus complaint filed in Oklahoma. BP Exploration's Louisiana suit (1) is duplicative litigation, (2) encroaches on the principles of comity and coordinate jurisdiction among federal courts of equal rank, and (3) Oklahoma is better suited to decide the issues raised since Oklahoma has the greatest nexus to the underlying facts and Oklahoma law will apply to the case as explained below.

## II.   THE STATE OF LOUISIANA AND LOUISIANA LAW HAVE NO CONNECTION WITH THE PARTIES' CONTRACT NOR ANY CLAIM RAISED BY BP EXPLORATION OR CALLIDUS

Though BP Exploration elected to file a separate state action in Louisiana, there is no factual basis to even remotely suggest that Louisiana has any connection to any fact, action or claim associated with this suit. Simple geography shows that Louisiana law will not apply pursuant to the Outer Continental Self Lands Act (OCSLA) since Block 989 of the Vioska Knoll (where the Pompano Platform is located and the situs of some of the events described in BP

8

Exploration's petition) indisputably lies immediately south of the State of Mississippi and is "adjacent to" the State of Mississippi.  BP Exploration ignored the dictates of Rule 13(a) of the Federal Rules of Civil Procedure when it filed a Louisiana State Court action (without any event associated with the dealings between the parties having any relationship with the State of Louisiana) instead of asserting its alleged cause of action in a compulsory counterclaim in the Northern District of Oklahoma. Moreover, BP Exploration understands the risk that it took and has requested the District Court of Oklahoma to allow it to assert its counterclaim in the event that its attempt to pursue its claim in Louisiana fails.

Callidus submits that BP Exploration knowingly elected not to file its compulsory counterclaim as a legal strategy. BP Exploration answered the Callidus complaint in the Oklahoma case on June 20, 2002, twenty two days before it filed its separate suit in Louisiana on July 12, 2002.  Callidus further submits that BP Exploration's legal strategy is merely an attempt to forum shop and to maneuver the dispute into a jurisdiction that has no nexus to the events giving rise to the parties' claims.

### A. The Pompano Platform Is Not "Adjacent" To The State Of Louisiana

BP Exploration premised part of the allegations stated in its petition on the application of Louisiana law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"); however, under the OCSLA, Louisiana law does not apply. Section 1333(a)(2)(A) of the OCSLA provides:

> To the extent that they are applicable ... the civil and criminal laws of each adjacent State ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State <u>if its boundaries were extended seaward to the outer margin of the outer Continental Shelf</u>, and the President shall determine and publish in

9

the Federal Register such projected lines extending seaward and defining each such area.

43 U.S.C. § 1333(a)(2)(A) (emphasis added)

Because the President has not published the "projected lines" required by §1333(a)(2)(A), it is up to the courts to make the necessary adjacency determinations involving disputes governed by the OCSLA. *Snyder Oil Corp. v. Samedan Oil Corp.,* 208 F.3d 521, 523 (5th Cir. 2000). In making the adjacency determination under the OCSLA, the Fifth Circuit has stated that there is no clear test; however, the Court should consider the following four types of evidence in its "adjacency" analysis:

> (1) geographic proximity;
> (2) which coast federal agencies consider the subject platform to be "off of";
> (3) prior court determinations; and
> (4) projected boundaries.

*Snyder Oil* at 524; see also *Reeves v. B & S Welding, Inc.*, 897 F.2d 178 (5th Cir. 1990)

While BP Exploration will most likely argue that block 989 of the Viosca Knoll is closer to the eastern most point within Louisiana, this one factor is not determinative. In *Snyder Oil*, the Fifth Circuit was presented with a similar argument in determining whether Block 261 of the Main Pass Area was adjacent to Louisiana or Alabama. In making its determination, the Fifth Circuit refused to follow a formalistic "proximity test". *Id.* at 525. The Court instead focused on all of the evidence before it including charts, maps, notices and reports published by several Federal agencies. The Court also considered evidence that showed that an extension of the Alabama-Mississippi border either due South or in the natural southeasterly direction of the common boundary placed Main Pass 261 East of the extended boundaries. *Id.* at 526.

Considering the evidence before it, the Fifth Circuit affirmed the District Court's determination that Main Pass 261 was adjacent to Alabama for purposes of OCSLA. *Id.* at 528.

In the instant case, the attached exhibits show that Block 989 of the Viosca Knoll is East of the easternmost portion of Louisiana. (Mineral Management Service Outer Continental Shelf Protraction Diagram, Exhibits 3, 3A, 4, 4A, and 4B). If the boundary between Louisiana and Mississippi is extended into the Gulf of Mexico, it passes to the West of Viosca Knoll 989 making it adjacent to the State of Mississippi.[4]   Furthermore, if the Alabama-Mississippi boundary is extended into the Gulf as was done in *Snyder Oil*, the projected Alabama-Mississippi boundary passes to the East of Viosca Knoll by approximately 13.5 miles.[5]   From this evidence, the Court should conclude that Block 989 of the Viosca Knoll is adjacent to Mississippi for the purposes of OCSLA.

**B.    Louisiana Law Is Not Applicable To The Contract In This Case**

Assuming *arguendo*, that Louisiana law does apply, the Court must then apply Louisiana's conflict of laws jurisprudence to determine which state's law the Court should use to

---

[4]        The Louisiana State boundary line extends to the 3 mile limit per the Submerged Lands Act, Title 43 U.S.C. § 1312. *See also Reeves v. B&S Welding, Inc.,* 897 F.2d 178, 180 (5th Cir 1990) Callidus Exhibit 3A shows this 3 mile limit depicted as the "Submerged Lands Act Boundary." By comparing Callidus Exhibits 3 and 4, the Louisiana boundary stops to the west of 45' on Callidus Exhibit 4. Following the 45' longitude line down to the bottom of Callidus Exhibit 4, Viosca Knoll 989 is East of this point making it East of the outermost boundary of Louisiana.

[5]        The boundary between Mississippi and Alabama is depicted in Callidus Exhibit 3 and 3A. The boundary line is to the West of the center point between 30' and 15' on the map. If that point is compared to Callidus Exhibit 4A, the Alabama-Mississippi boundary lies approximately in the middle of Viosca Knoll 994. According to the U.S. Department of the Interior Minerals Management Service, each regular block is 15,840 feet on each side. (Callidus Exhibit 4B). This translates into 3 miles per side. Viosca Knoll is 4.5 blocks from the projected extension of the Alabama-Mississippi boundary placing it within approximately 13.5 miles West of the Alabama-Mississippi boundary.

11

interpret the contract between the parties.   Under Louisiana's choice of law principles, the first

inquiry is whether there is a true or false conflict of interest.  *Peavey Co. v. M/V Anpa*, 971 F.2d

1168, 1171 (5th Cir. 1992); *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.*, 846 F.2d 319, 322

(5th Cir.1988).   In *Peavey*, the Fifth Circuit explained the difference between a true conflict of

interest and a false conflict of interest as follows:

> A false conflict exists when only one state has a legitimate
> interest in the application of its law to resolve the issue. A
> true conflict exists when each state has such an interest. To
> determine whether a state has a legitimate interest in
> requiring that its laws be applied, one must examine
> whether "the state's relationship to the dispute is within the
> scope of the state's policy. *Sandefer*, 846 F.2d at 322. If
> there is a false conflict, one must apply the law of the state
> with the interest. If there is a true conflict or an unprovided
> for case in the interest analysis principle, a situation where
> neither state has an interest, then one must look to the
> *Second Restatement.*

*Peavey*, 971 F.2d at 1172 (footnote omitted).

In the present litigation, Callidus is incorporated in Oklahoma, with its principal place of

business in Tulsa, Oklahoma.  BP Exploration is a Delaware Corporation.   The specifications for

the manufacture of the flare tips were communicated by BP Exploration's agent, Mustang

Engineering (located in Houston, Texas).  All engineering and manufacturing of the flare tips

occurred in Oklahoma.  The contract provided that it "shall be construed in accordance with the

laws of the United States and state of delivery and where applicable shall be governed by the

provisions of the Uniform Commercial Code." (Purchase Order dated June 26, 2000, Exhibit 1,

p. 10).  Callidus delivered the flare tips in Oklahoma. Lastly, the flare tips were shipped "F.O.B.:

Loaded Truck, Callidus Facilities, Beggs, OK." (Purchase Order dated June 26, 2000, Exhibit 1,

p. 1)  BP Exploration affirmatively represented to Callidus in the contract documents that the

12

flare tips were intended for use in Federal waters. (Purchase Order dated June 26, 2000, Exhibit 1, p. 4). Under the *Peavey* analysis, the only states that could possibly have a legitimate interest in this case would be Oklahoma, Texas and Delaware.   See *Freeport McMoRan Resource Partners, Limited Partnership v. Kremco, Inc.*,   827 F.Supp. 1248, 1253 (E.D.La. 1993).

Because none of the acts giving rise to the contract between the parties occurred in Delaware, Delaware has no legitimate interest in applying its law to the case.   Similarly, Texas has little if any interest in applying its law to the case.   The only acts which occurred in Texas were the issuance of a purchase order and communications to Callidus regarding some of the specifications for the flare tips.   The parties agreed that Oklahoma law applied to the contract, and performance of the contract and delivery of the flare tips occurred in Oklahoma. Therefore, Oklahoma is the only state with a legitimate interest in the application of its law to resolve the issues in dispute.   Because Oklahoma law is the only law with a legitimate interest, there is a false conflict and Oklahoma law applies.

Again, assuming for the sake of argument that Texas also has a legitimate interest in applying its contract laws to the contract at issue, under the second half of the *Peavey* analysis, Oklahoma law would still apply.   Pursuant to *Peavey*, if there is a true conflict (two or more states have a legitimate interest), the Court must then utilize the *Second Restatement's* "center of gravity" or "interest analysis" test which focuses on the state's contacts with the issue. *Peavey*, 971 F.2d at 1172 ; *Robinson v. American Marine Holdings, Inc.*, 2002 WL 873185 at p.4 (E.D. La. 2002).   Under the interest analysis test, the following contacts are deemed most relevant:

(a) the place of contracting,

13

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id., citing* Restatement (Second) of Conflict of Laws § 188 (1971).

In the instant case, the contract was entered into in Oklahoma (BP's purchase order was accepted in Oklahoma). The contract was negotiated in Oklahoma and Texas between the parties. All of the engineering work and construction of the flare tips occurred in Oklahoma. In its Louisiana state court petition, BP Exploration alleged that damage to the flares was a "result of thermal stresses not adequately considered in the design of the flares." (BP Exploration Petition for Damages, Exhibit 8). BP Exploration also alleged that in the original design and manufacture of the flares, Callidus "failed to take into account alternating heating and cooling," and further, that Callidus "improperly designed and improperly manufactured weld joints." (BP Exploration Petition for Damages, Exhibit 8). The entire basis of BP Exploration's Louisiana petition is the alleged design and manufacturing defects that occurred in Oklahoma. Furthermore, Callidus is an Oklahoma corporation with its principal place of business in Oklahoma, and BP Exploration is a Delaware corporation. Under the preceding factors, Oklahoma has the most significant contacts with the contract at issue, and therefore, Oklahoma law should govern this case.

## CONCLUSION

Callidus submits that BP Exploration's Louisiana case should be dismissed because the subject matter of this litigation is currently pending before the Northern District of Oklahoma. Callidus filed suit against BP Exploration on the same contract that is the subject of this litigation prior to BP Exploration filing suit in Louisiana state court. Because the subject matter of BP Exploration's petition against Callidus arose out of the same transaction and occurrence that is the subject matter of the suit originally filed by Callidus in the Northern District of Oklahoma, Callidus respectfully submits that the above captioned suit "substantially overlaps" with the Oklahoma litigation and should be dismissed. Rule 13(a) of the Federal Rules of Civil Procedure and the "First to File" rule dictate that BP Exploration must pursue its claims against Callidus in Oklahoma, the forum where suit was first filed. Moreover, there are no compelling justifications for retaining this case because Louisiana has no nexus to the events giving rise to the either parties' claims. Therefore, Callidus respectfully requests this Honorable Court for an Order dismissing the above captioned litigation.

WHEREFORE, defendant Callidus prays this Court dismiss the complaint (removed petition) or in the alternative, transfer this action to the Northern District of Oklahoma.

15

Respectfully submitted,

**DANIEL T. PLUNKETT TA (#21822)**
**ADAM C. McNEIL (#27001)**
**McGLINCHEY STAFFORD**
643 Magazine Street
New Orleans, Louisiana 70130
Telephone:     (504) 586-1200
Fax:                (504) 596-2871
**Attorneys    for    Callidus    Technologies,**
**L.L.C.**

and

**STEVEN M. HARRIS, OBA #3913**
**DOYLE HARRIS DAVIS & HAUGHEY**
1350 South Boulder, Suite 700
Tulsa, OK 74119
(918) 592-1276
(918) 592-4389 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served upon all counsel of record by depositing same in the U.S. Mail, postage prepaid, on this ____7th____ day of August, 2002.

350364

16

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP EXPLORATION AND<br>PRODUCTION, INC.,<br><br>        Plaintiff,<br>vs.<br><br>CALLIDUS<br>TECHNOLOGIES, L.L.C.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.  02-2318<br><br><br><br>SECTION:   "A"<br><br><br>MAGISTRATE: 1 |

**ORDER**

Considering the foregoing Motion;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Callidus

Technologies, L.L C.'s Motion to Dismiss be and the same is hereby GRANTED.

New Orleans, Louisiana this _____ day of _____, 2002.


_____
**J U D G E**

1

## UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP EXPLORATION AND PRODUCTION, INC., | ) | CIVIL ACTION NO.  02-2318 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | SECTION:   "A" |
| | ) | |
| CALLIDUS TECHNOLOGIES, L.L.C., | ) | |
| | ) | |
| | ) | MAGISTRATE: 1 |
| Defendant. | ) | |

### NOTICE OF HEARING

**PLEASE TAKE NOTICE** that undersigned counsel will bring this Motion to Dismiss before the Honorable Judge Jay C. Zainey, United States Judge, on the 28th day of August, 2002, at 9:00 a.m., or as soon thereafter as counsel may be heard.

New Orleans, Louisiana this _____ day of _____, 2002.


_____
**J U D G E**

1

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**