172755

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 SEP -3  PM 4:28

LORETTA G. WHYTE
CLERK

70150-6310

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BP EXPLORATION AND PRODUCTION, INC.,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO.** 02-2318 A |
| **VERSUS** | |
| **CALLIDUS TECHNOLOGIES, L.L.C.,** | **SECTION** |
| **Defendant** | **JUDGE ZANEY** |
| | **MAG.** |

## MEMORANDUM IN OPPOSITION TO CALLIDUS TECHNOLOGIES, L.L.C.'S MOTION TO DISMISS AND/OR TRANSFER VENUE

**MAY IT PLEASE THE COURT:**

Defendant, Callidus Technologies, L.L.C., has moved this Court to dismiss BP's suit now pending in this court (having been removed from Louisiana State Court). Callidus claims that BP's suit should be dismissed because there is a pending suit filed by Callidus in federal court in Oklahoma, which Callidus claims arises out of the same contract and thus should be either dismissed or consolidated with the suit in Oklahoma. Although Callidus does attach to its motion numerous exhibits, including copies of the "suit" filed by Callidus in Oklahoma federal court and the Motion to Dismiss that suit filed by BP, Callidus fails to mention in its Memorandum that the suit in Oklahoma is a <u>declaratory judgment suit</u> filed by Callidus and does not seek damages. Callidus also fails to note anywhere in its Memorandum that the suit in Oklahoma is now subject to BP's Motion to Dismiss that declaratory judgment action, and that consequently there is very likely to be no "suit" with

which this case should be consolidated. BP's Motion to Dismiss Callidus' Declaratory Judgment Action has been filed in the Northern District of Oklahoma, and is set for hearing on September 6, 2002. Callidus has previously submitted as Exhibits, copies of BP's Original Brief filed in the Northern District of Oklahoma, as well as Callidus' Objection and Response to Motion to Dismiss. Attached hereto is BP's Reply Brief to Callidus' Objection and Response (Exhibit A). Also attached are two Affidavits submitted with BP's Reply Brief, that being Affidavit from Deborah Hawkins (Exhibit B) and Stephen Croghan (Exhibit C).

Therefore, this is not an instance, as suggested by Callidus, of two similar lawsuits filed in two different jurisdictions. Although the Fifth Circuit generally follows the "first-filed" rule to avoid duplicative lawsuits filed in federal district courts, that rule is not adhered to where compelling circumstances dictate that the first action be dismissed rather than the second one. "Compelling circumstances" exist when a declaratory action is filed in anticipation of another lawsuit in order to secure a more favorable forum. *Johnson Brothers Corp. v. International Brotherhood of Painters,* 861 F. Supp. 28 (M.D. LA 1994).

In the case of *909 Corporation v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290 (S.D. TX 1990), the court also refused to apply the "first to file" rule where a declaratory judgment action had been filed in an obvious attempt to choose the forum.

> Application of the first-filed rule could penalize the Fund for its attempt to make a good faith effort to settle out of court. 'Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already-drafted Complaint.' (quoting from *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 299 (E.D. LA 1988), quoting *Columbia Pictures Indus. v. Schneider*, 435 F. Supp.

> 742, 747-48 (S.D. NY 1977)). Anticipatory suits deprive a potential plaintiff of his choice of forum. The Court should not allow this type of forum shopping in the form of anticipatory, declaratory judgment suits.

*Id. at* 1293.

Again, in *Stack v. Whitney National Bank*, 789 F. Supp. 753 (S.D. MS 1991), affirmed 958 F.2d 1078 (5th Cir. 1992) the Court did not follow the "first-filed" rule to allow a declaratory judgment plaintiff to secure his choice of forum.

> In this case, however, it is not the first-filed suit which should be the vehicle through which the parties reach judgment, but the second-filed suit, in which the Stacks may assert all their claims against Whitney.

*Id. at* 757.

Courts in other jurisdictions have also applied this exception to the "first-filed" rule. Where the "first-filed" case is a declaratory judgment action, and one that would not determine all of the issues in the case, the courts did not follow the "first-filed" rule. *Koch Engineering Co., Inc. v. Monsanto Company*, 621 F. Supp. 1204 (E.D. MO 1985); *Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Northwestern National Insurance Company of Milwaukee, WI*, 778 F. Supp. 1274 (S.D. N.Y. 1991); *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491 (D. KS 1995). For instance, the Court explained the exception to the "first-filed" rule, as follows, in the *Koch Engineering* case:

> [I]t is clear to this Court that the first to file rule should not be applied. As an initial matter, it is important to note that the two actions are not identical. Koch's action in this Court seeks a declaration of the parties' rights under the contract. Monsanto's action, filed in the Southern District of Texas, seeks damages for breach of contract, breach of warranty, negligence and a violation of the Texas Deceptive Trade Practices Act. Had it not been for the Declaratory Judgment

3

> Act, Koch could not have filed this or any other lawsuit. It is this use of the Act, to which this Court objects. Koch's suit, while furthering none of the goals of the Declaratory Judgment Act, represents only a race to the courthouse. This type of procedural fencing denies the injured party his right to choose the forum in which to seek redress.

*Koch Engineering Co., Inc. v. Monsanto Company, supra* at 1207.

Nor in the present case are the suits filed in Oklahoma and the suit filed in Plaquemines Parish and removed to this Court identical cases. The suit in Oklahoma is a suit by Callidus, the true defendant, seeking a declaration of its obligations under the contract. There is no claim for any damages. It is only in the suit pending in this Court in which BP, the real plaintiff, has made a claim for its damages for Callidus' breach of the contract, breach of warranty, redhibition, including costs, interest and attorneys' fee. A dismissal of this suit would mean that BP could not pursue its claim for damages. Although Callidus claims that BP should be forced to file its counterclaim for damages in the declaratory judgment action in Oklahoma, the Courts have not given such an interpretation to the compulsory counterclaim rule, Federal Rule of Civil Procedure 13A. Obviously, if the compulsory counterclaim rule applied in declaratory judgment actions, then the true defendants would be rewarded for racing to the courthouse and forcing the true plaintiff to litigate in the forum of defendant's choice. However, when presented with the question of the interrelationship between Rule 13A, the compulsory counterclaim rule, and 18 U.S.C. §2201, the Declaratory Judgment Act, this Eastern District of Louisiana concluded that the plaintiff's claim need not be asserted as a compulsory counterclaim to the declaratory judgment action filed.

> Diamond's declaratory judgment action was filed in the forum of its choice in anticipation of Franklin's lawsuit for damages under the Jones Act and general maritime law. That

> Diamond won the race to the courthouse by several days does not entitle it to gain precedence in time and forum, forcing Franklin to litigate his Jones Act claim as a compulsory counterclaim in the forum of Diamond's choice. To so conclude would encourage the race to the courthouse.

*Franklin v. Diamond Offshore Management Co.,* 1994 W.L. 144288 (E.D. LA 1994).

This interrelationship between the compulsory counterclaim rule and the declaratory judgment action was again explained in the case of *National Union Fire Insurance Co. of Pittsburgh v. Jett,* 188 F.R.D. 336 (S.D. NY 1988).

> Furthermore, the principle back of Rule 13(A) of concluding all related controversies in one suit must take into some account the equally valid and general proposition that a claimant should be able to choose his own forum. If one hauled into Court as a defendant has a claim but the advisory plaintiff does not, the nominal defendant ought to be allowed to name the time and place to assert it. He should not be forced into court by a would-be plaintiff and forced to assert, or lose, a claim that he may choose not to litigate at all, or which he may choose to assert at another time and place.

*Id. at* 338, quoting from *Lawhorn v. Atlantic Refining Co.,* 299 F.2d 353, 357 (8th Cir. 1962).

Callidus' declaratory judgment action was filed in the forum of its choice in anticipation of BP's lawsuit for damages pursuant to a breach of contract. The mere fact that Callidus won the race to the courthouse does not entitle it to gain precedence in time and forum, forcing BP to litigate its claim as a compulsory counterclaim in the forum of Callidus' choice. To so conclude would encourage the race to the courthouse. BP as the true plaintiff should be able to choose its own time and place in which to assert its claim.

Furthermore, Louisiana has the most significant connection to Block 989. Callidus' argument that the State of Louisiana has no connection with the parties' contract nor any claims raised by BP is incorrect. The oil and gas from Pompano/Mica come ashore in Louisiana. The employees working offshore for BP are primarily from Louisiana. (See attached Affidavit of BP's Employee Services Team Leader, Deborah Hawkins, Exhibit B). Of the 36 employees assigned to Pompano, 23 are Louisiana residents. Venice, Louisiana is the shorebase for all Pompano operations. (See Affidavit of Stephen Croghan, Exhibit C).

Additionally, all operations related to the installation and repair of the flare tips on the Pompano platform were out of Louisiana bases. (See Affidavit of Stephen Croghan, Exhibit C). Callidus performed repairs to the flare tips "on site" at Pompano. Callidus representatives were on location, giving instructions to contractors who traveled from either Texas or Louisiana, not from Oklahoma, to the offshore site. Callidus argues that its only repair obligation was to repair at the Callidus plant in Beggs, Oklahoma and that BP elected instead to perform the repairs on site. Apparently, Callidus' contention is that the damage repairs should not have been done off the coast of Louisiana and therefore Louisiana has nothing to do with the case. On the contrary, BP shows that it simply had no choice but to attempt the repairs on site, off the coast of Louisiana. If the repairs had been effected at Beggs, Oklahoma, it would have been necessary to dismantle the flare tips and transfer them to a large barge by means of a crane and then to shore, in Louisiana, at a cost of perhaps as much as $1,000,000. Once the barge and the flare tips reached Louisiana, the flare tips would have been transferred by truck from Louisiana to Beggs, Oklahoma. The same repairs would have been performed at either location.

Then, the reverse operation would have been required to return the flare tips to the Pompano platform off the coast of Louisiana, all at great expense, not to mention loss of production. BP obviously made the wise choice to have the repairs effected in place, at the supervision of Callidus, and exactly as Callidus wished. It was simply not practical to return the flares to Oklahoma for repair.

Louisiana law will apply to BP's claims pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). Section 1333(a)(2)(A) of the OCSLA provides:

> To the extent that they are applicable...the civil and criminal laws of each adjacent State...are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area.

43 U.S.C. § 133(a)(2)(A).

The OCSLA declares that the law of the adjacent state acts as surrogate federal law. To determine what is the adjacent state, the courts consider the following: 1) geographic proximity; 2) determinations by federal agencies; 3) prior court determinations; and 4) projected boundaries. *Snyder Oil Corp. v. Samedan Oil Corp., supra; Reeves v. B&S Welding, Inc.,* 897 F.2d 178 (5th Cir. 1990). Each of these considerations clearly shows Block 989 of Viosca Knoll to be off the coast of Louisiana. What state is directly north of a particular block is not determinative.

Callidus appears to concede that Block 989 is in closer geographical proximity to Louisiana than either Mississippi or Oklahoma. (See Defendant's Memorandum in Support p. 10). However, Callidus urges this Court, under the guise of *Snyder*, to

7

disregard the fact that Block 989 is in closer geographical proximity to Louisiana than to Mississippi. Callidus points out that the Court in *Snyder* rejected a formalistic "geographic proximity" test, however, it did so in favor of following all relevant evidence, and did not disregard the geographical proximity of the states to the block in question. See *Snyder, supra,* at. 525. The Court in *Snyder*, while conceding that the Block in question was approximately 6 miles closer to Louisiana than to Alabama, found that a review of all the relevant evidence concluded that the Block in question was off the coast of Alabama.

Using Callidus' own Minerals Management Services' charts, Louisiana is about 30 miles away from Viosca Knoll 989, while Mississippi is "off the chart" in the distance (some 90 miles) and cannot even be measured on those charts submitted by Callidus because it does not even appear. Block 989 is clearly closest to Louisiana, as evidenced by the attached Affidavit of Stephen Croghan, the Pompano platform is 45 miles from Venice, Louisiana and 100 miles from the nearest Mississippi landfall. (Affidavit of Croghan, Exhibit C). In the instant case the distance between Louisiana landfall and Mississippi landfall is close to ten times that of the Block in question in *Snyder*.

Callidus' argument that "simple geography negates BP's claim that Louisiana law should apply" is difficult to understand. If the boundaries of the states were projected along their natural lines, Block 989 would clearly be "off of" the coast of Louisiana. Callidus' naked assertion that the projected boundary lines will place Block 989 "off of" the coast of Mississippi is not enough. Again, in *Snyder* the Court reviewed evidence consisting of maps, charts, notices and reports published by MMS, the Bureau of Land Management, NOAA, and the Coast Guard, supporting the conclusion that the Block in

8

question was considered to be "off of" the coast of Alabama. The Court in *Snyder* wisely noted that "...while *Reeves* instructs that proposed boundary lines are relevant to a private dispute, it would be improper for a court to hold that a given boundary projection was conclusively established for purposes of §1333(a)(2)(A)." *Snyder* at 523.

The only court case that could be found discussing Viosca Knoll noted that Block 956 in the Viosca Knoll area was "off of the Louisiana coast." *Ledet v. Shell Oil Company*, 1998 WL 754554 (E.D. La. 1988). Block 956, which is highlighted in pink on Exhibit E, is located approximately 60 miles off the coast of Louisiana and lies to the east-northeast of Block 989, which is highlighted in yellow on Exhibit E. (See attached MMS Map, Exhibit D & BP Map, Exhibit E)[1]. Block 989 is located approximately 15-30 miles closer to Louisiana and is to the south-southwest of Block 956. (See Exhibits D & E). Common sense dictates that since the Court in *Ledet* cited to Block 956 as being off the coast of Louisiana, then Block 989 situated west-southwest of that block would also be off the coast of Louisiana.

The Fifth Circuit has identified four types of relevant evidence to consider when undertaking an "adjacency" analysis. The Court has not elevated one type of evidence to greater standing than the other types articulated, but considers all of the relevant evidence when making an "adjacency" determination. Callidus claims that simple geography and its own projected boundaries place Block 989 "off of" the coast of Mississippi. However, Callidus seems to ignore the fact that Block 989 is much closer to

---

[1] The MMS map clearly depicts both Block 989 and Block 956, however, the only landfall depicted in the MMS map is that of Louisiana. BP attaches a map which shows both Block 989 and 956 as well as the coastlines of Louisiana, Mississippi, and Alabama. This map shows that Block 989 is far closer to Louisiana than to Mississippi and also illustrates the position of Block 989 relative to Block 956, which was cited as being off the coast of Louisiana in *Ledet*.

9

Louisiana in geographical proximity and that a prior court decision raises precedent that Block 989 should be considered off the coast of Louisiana. Furthermore, if the boundaries of the states were projected along their natural lines, Block 989 would clearly be "off of" the coast of Louisiana. After a review of all of the relevant evidence it is evident that Viosca Knoll Block 989 is "off of" the coast of Louisiana and therefore Louisiana law will apply.

Callidus argues that even if Louisiana law is applied pursuant to OCSLA then the Court must apply Louisiana's conflict of laws jurisprudence. This reasoning is flawed because "[s]tate choice of law principles are superceded by adjacent state law as surrogate federal law in OCSLA claims." *Reeves v. B & S Welding, Inc.*, 1988 WL 115278 (E.D. La. 1988), affirmed 897 F.2d 178 (5th Cir. 1990). This congressionally mandated choice of law provision trumps any contrary contractual provisions. *Snyder, supra*, at 523. Therefore, once the evidence establishes that Bock 989 is "off of" the coast of Louisiana, Louisiana law will apply as surrogate federal law.

## CONCLUSION

Callidus has filed a Motion to Dismiss this case, citing another pending case in Oklahoma, or alternatively seeking to have this case transferred and consolidated with the suit in Oklahoma. However, Callidus ignores that the suit in Oklahoma is one for declaratory judgment by Callidus and that it is subject to being dismissed in order that this Louisiana lawsuit can proceed. Callidus further discounts the fact that the only suit where all issues between BP and Callidus can be resolved is the suit pending in the Eastern District of Louisiana. Courts disfavor a race to the courthouse and the possibility of inefficient duplicative lawsuits. Only the suit brought by BP and pending in this Court can

resolve all of the issues between the parties. By filing for a declaratory judgment in Oklahoma, Callidus cannot force BP to file a counterclaim. BP, as the true plaintiff, has a right to choose its forum. It has chosen Louisiana as the forum because the property involved where the defective flare tips were damaged is off the coast of Louisiana. In BP's mind this property, the everyday activities on the property and the men who work on the property, all have significant contacts with Louisiana. This Court is most experienced in handling litigation arising on the Outer Continental Shelf in the Gulf of Mexico and the most logical forum because Louisiana law will apply. Accordingly, BP respectfully submits that this Court should dismiss Callidus' Motion to Dismiss and/or Transfer Venue and should allow the suit filed by BP to proceed as the only suit.

Respectfully submitted,

_____
RONALD A. JOHNSON, T.A. (#7329)
BETTYE A. BARRIOS (#2820)
        and
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
701 Poydras St., Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001
Fax: (504)528-3030
Attorneys for BP Exploration and Production, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon opposing counsel, by mailing a copy of same, postage prepaid, this 3rd day of September, 2002.

_____

11

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**